## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KALKREUTH ROOFING  and SHEET METAL, | :  Case No.:4:05cv2079 |
| Plaintiff | :   Judge Jones |
| | : |
| v | : |
| | : |
| LOCAL UNION NO. 30 OF THE UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKS, | : |
| Defendant | : |

## MEMORANDUM AND ORDER

February 3, 2006

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion to Dismiss the Complaint (doc. 10) pursuant to Fed.R.Civ.P. 12(b) filed by Defendant Local Union No. 30 of the United Union of Roofers, Waterproofers, and Allied Workers (collectively "Defendant" or "Local Union") on November 23, 2005.  We also have before us a Motion for Summary Judgment (doc. 13) filed by Plaintiff Kalkreuth Roofing and Sheet Metal ("Plaintiff" or "Kalkreuth") on December 14, 2005.

For the reasons that follow, we will construe Defendant's Motion to Dismiss as a Motion for Summary Judgment, which will be granted.  Plaintiff's Motion for Summary Judgment will accordingly be denied and the case closed.

1

## PROCEDURAL HISTORY:

Plaintiff initiated this action by filing a complaint against Defendant on October 12, 2005 in the United States District Court for the Middle District of Pennsylvania.  Plaintiff seeks to vacate a Joint Conference Board ("JCB") decision pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

In Plaintiff's three count complaint, it asserts that the decision should be vacated because the JCB exceeded the scope of its authority under the parties' collective bargaining agreement ("CBA") and federal arbitration law; that the JCB substituted its own judgment for the express language in the CBA; and that the JCB lacked jurisdiction over the Naval Supply Activity Center grievance.

We have jurisdiction over this matter pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

On November 23, 2005, Defendant filed the instant Motion to Dismiss and on December 14, 2005, Plaintiff filed a Motion for Summary Judgment.  The Motions have been fully briefed and are ripe for disposition.

## STANDARD OF REVIEW:

We initially note that because Defendant has submitted matters outside of the pleadings for our consideration, we shall review the Motion to Dismiss (doc. 10) under the standard appropriate for a Motion for Summary Judgment.  See

Fed.R.Civ.P. 12(b)(6) ("If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . .").[1]

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992).  Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986).  This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial.  Id. at 325.

---

[1] We note that although Fed.R.Civ.P. 12(b)(6) provides that all parties shall be given a reasonable opportunity to present all material made pertinent to a motion for summary judgment by Fed.R.Civ.P. 56, such material, including but not limited to affidavits, has been submitted by the parties as we also have before us Plaintiff's Motion for Summary Judgment.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "As to materiality, the

4

substantive law will identify which facts are material." Id. at 248.  A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**RELEVANT FACTUAL BACKGROUND:**

We note that we will, where necessary, view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party in our analysis of the pending Motions.

Kalkreuth is an "employer" within the meaning of § 2(2) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2), and an employer in an industry affecting commerce within the meaning of §§ 2(2) and (7) of the LMRA, 29 U.S.C. § 152(2) and (7).  The Local Union is a labor organization within the meaning of § 2(5) of the LMRA, 29 U.S.C. § 152(5).  It represents employees in an industry affecting commerce within the meaning of §§ 2(3) and (7) of the LMRA, 29 U.S.C. § 152(3) and (7).

Kalkreuth is a West Virginia corporation which is licensed to do business and does business in the Commonwealth of Pennsylvania.  It maintains two offices and shops, one located in Wheeling, West Virginia ("Wheeling Shop") and one located in Frederick, Maryland ("Frederick Shop").  One of Kalkreuth's projects was located at the Naval Support Activity Center in Mechanicsburg, Pennsylvania

("Naval Project") and a second project, the Blue Cross/Blue Shield Highmark

project, was located in Manada Hill, Pennsylvania ("Highmark Project").  These

construction sites were the subject of the Local Union's grievances, as will be

discussed below.

Kalkreuth and the Local Union are parties to a CBA which, by its terms, is

effective from May 1, 2001 until April 30, 2009.  Pursuant to Article III, § 1 of the

CBA, the Local Union is the collective bargaining representative for a bargaining

unit comprised of all journeyman roofers, apprentices, and foremen working on all

commercial roofing and reproofing work and performing such work on projects

within the territorial scope of the CBA as set forth in Article V, § 2 thereof.

Article VII of the CBA establishes a JCB for the administration of the CBA.  A

procedure for the adjustment of grievances is provided in Article VIII, with the

final and binding decision to be made by the JCB unless the JCB is deadlocked.

Article VIII § 2(c) of the CBA, "Adjustment of Disputes," provides the following:

> Step Two: If the grievance is denied at Step One the Grieving Party
> may submit a grievance to the Joint Conference Board within ten (10)
> days of receipt of the denial response.  If the grievance is not
> submitted to the Joint Conference Board within this time period, the
> grievance shall be deemed to finally denied.  Where the grievance was
> initiated by an employee, the Union shall inform the grievant in
> writing why the grievance was not submitted to the Joint Conference
> Board.
>
> The Joint Conference Board shall meet monthly when there are

grievances which have been submitted to be heard by the Joint
Conference Board, and shall hear presentations by the Union and the
Employers and the Association involved on all grievances which have
been denied at the First Step of the grievance procedure during the
monthly period preceding the meeting.

The Joint Conference Board shall consist of three (3) representatives
of the Union and three (3) representatives of the Association.  Two (2)
of the Union representatives must concur for the Joint Conference
Board to issue a decision.  The Joint Conference Board shall issue its
decision to each grievance within fifteen (15) business days of the
presentation of the grievance to the Joint Conference Board.  The
decision issued by the Joint Conference Board shall be binding on the
parties to the grievance.

On November 16, 2004, Frank Olenick ("Mr. Olenick"), a Union Business
Representative, filed a grievance with J. David Hesse ("Mr. Hesse"), the Vice-
President of Kalkreuth's Maryland division, seeking Board Pay as provided in
Article XXIII for work performed on the Naval Project in Mechanicsburg,
Pennsylvania.  Specifically, the Union charged that the employer failed to pay the
Board rate of pay to Local Union employees working on the project where the
employer's shop was more than 75 miles from the jobsite.  Mr. Hesse denied the
grievance as per a November 23, 2004 letter.  The grievance was then submitted to
the JCB, which held a hearing on the matter on August 23, 2005.

Subsequently, on December 2, 2004, Mr. Olenick filed a second grievance
seeking Board Pay for work performed at the Highmark Project in Manada Hill,
Pennsylvania.  As with the first grievance, the Union charged that the employer

7

failed to pay the Board rate to Local Union employees working on the project

where the employer's shop was more than 75 miles from the jobsite.  The Union

did not receive a response from the employer on the grievance.  The grievance was

submitted to the JCB and the Board considered the grievance with the Naval

Project grievance on August 23, 2005.  Kalkreuth consented to the JCB's

jurisdiction over the grievance.

On September 9, 2005, the JCB unanimously sustained the Union's

grievances, finding that Board Pay was owed.[2]  Article XXIII, § 2, entitled "Out-

Of-Town Work," provides as follows:

> Section 2.  All jobs more than 75 miles from the Employer's shop
> shall be deemed Board Jobs.  Board shall be paid at the rate of $35.00
> per day when the employee is available for work on the job and, if the
> job extends over a weekend, the Employer is to pay the employee's
> Board for Saturday and Sunday.  On such jobs all necessary
> transportation and travel expenses shall be paid to the job at the start
> and, for the return trip, at the completion of the job.  Transportation
> and travel expenses created by extra trips to and from such jobs, when
> ordered by the Employer, shall be paid by the Employer when
> incurred.  Employees working on Board Jobs shall not be entitled to
> the daily travel expense allowance called for in Section 4 of this
> Article.

In addition, Article XXIII, § 4, states the following:

> Section 4.  On all jobs seventy-five (75) miles or less from the

---

[2] As accurately submitted by Defendant, Article VIII § 2 of the CBA provides that the
JCB does not have to issue a unanimous decision; rather, only two of the Union representatives
and two of the Association representatives must concur.

Employer's shop at which the employee is employed, employees shall receive a daily travel expense allowance for ordinary and necessary expenses incurred, or reasonably expected to be incurred, in the business of the Employer.  On all such jobs employees shall be paid, in addition to wages, an allowance of $5.50 per day for travel expenses for each day employed except as provided below:

(a) Where the Employer's shop is located within the geographic boundaries of Atlantic or Cape May counties in New Jersey, employees shall be paid a travel expense allowance of $7.60 per day for each day employed on jobs seventy-five (75) miles or less from the Employer's shop at which the employee is employed.

(b) Where an Employer's shop is not located within the geographic boundaries of Atlantic or Cape May counties in New Jersey contracts to perform work covered by this Agreement in said counties, employees shall be paid a travel expense allowance of $7.60 per day for each day employed on all such jobs that are seventy-five miles or less from the Employer's shop at which the employee is employed.

For travel expense allowance and Board Job purposes, determination of the aforementioned seventy-five mile limit shall be made by a straight-line measurement of eighteen (18) inches from the Employer's shop on the Local 30 Travel Map established by the Union and the Association in January of 1980.

In its September 9, 2005 decision, the JCB held that employees employed on the Naval Project and Highmark Project were entitled to Board Pay.  In its decision, the JCB reasoned that the Wheeling Shop, which was more than 75 miles from either job site, was the applicable shop for measuring the 75 mile distance because: (1) the only signed CBA on file between Roofers Local 30 and Kalkreuth applicable to the area where the job sites are located shows the employer's location

and contact number as being Wheeling, West Virginia and (2) the employer's Vice-President testified that he had not signed a CBA or PLA with Local 30 in the relevant areas using the Frederick, Maryland location. Accordingly, the JCB determined that the employees employed on the Naval Project and Highmark Project were entitled to Board Pay, as they were employed on projects more than 75 miles from the employer's shop.

By a September 23, 2005 letter, Kalkreuth requested that the JCB vacate its decision. The JCB denied Kalkreuth's request by letter dated September 30, 2005. Kalkreuth subsequently filed the instant action seeking to vacate the JCB's decision.

## **DISCUSSION:**

In the Motion, Defendant asserts that Plaintiff's argument that the JCB altered the Board Pay provision under the CBA, exceeding the scope of its authority, is fatally flawed. In that regard, Defendant argues that the JCB determined the relevant shop for determining Board Pay to be the Wheeling Shop, which is unquestionably more than 75 miles from the job sites, and therefore the employees at issue should receive Board Pay. "Plaintiff is ultimately asking this Court to disturb the Board's reasoning that the Wheeling Shop is the relevant shop merely because it disagrees [with] that reasoning - such is not the province of the

Court." (Def.'s Br. Supp. Mot. Dismiss at 10).  With regard to Count II of

Plaintiff's complaint, the JCB allegedly ignoring the express language of the CBA

governing the measurement for the 75 mile Board Pay requirement, Defendant

maintains that no measurement requirement was ignored as the JCB first

determined that the relevant shop was the Wheeling Shop, and the JCB concluded

it was a given that Wheeling, West Virginia is more than 75 miles from the job

sites in question.  Finally, Defendant contends that Count III of Plaintiff's

complaint, which raises the issue of the JCB's jurisdiction, is meritless.

     In response, Plaintiff argues that the JCB's decision manifestly disregards

the CBA between the parties and should be vacated.  "Plainly stated, the JCB has

required Kalkreuth to pay monies to the grievants even though they were hired by

an office within 75 miles of the project sites and were themselves from the general

area surrounding the work sites." (Pl.'s Br. Supp. Mot. Summ. J. at 8).  Plaintiff

maintains that the actual grievants were from the Harrisburg, Pennsylvania area

and were not traveling from the Wheeling, West Virginia shop to work on the

Harrisburg area projects.  In addition, the Naval Project grievance should have

been denied because it was not taken to arbitration in a timely manner.

     We initially note that as submitted by Defendant, the Third Circuit Court of

Appeals has instructed that the decision of a joint labor-management committee,

such as the Joint Conference Board, is entitled to the same deference due the

decision of an arbitrator.  <u>Eichleay Corp. v. International Ass'n of Bridge</u>, 944 F.2d

1047, 1056 n.7 (3d Cir. 1991) (citing <u>Griesmann v. Chemical Leaman Tank Lines,</u>

<u>Inc.</u>, 776 F.2d 66, 74 (3d Cir. 1985)).  Attempts to overturn arbitration awards face

a well-established, consistent, and exceedingly narrow standard of review.  <u>See</u>

<u>United Indus. Workers v. Gov't of the Virgin Islands</u>, 987 F.2d 162, 170 (3d Cir.

1993) (scope of review is "narrowly circumscribed"); <u>Newark Morning Ledger Co.</u>

<u>v. Newark Typographical Union</u>, 797 F.2d 162, 165 (3d Cir. 1986) (the "strict

standard means that a reviewing court will decline to sustain an award 'only in the

rarest case'").  The Third Circuit Court of Appeals has explained that as the

arbitrator's construction of the collective bargaining agreement is bargained for, a

district court is not free to vacate an award because it views the merits differently

or would decide the merits differently.  <u>United Indus. Workers</u>, 987 F.2d at 170

(citing <u>W.R. Grace & Co. v. Local Union</u>,759, 461 U.S. 757, 764 (1983)); <u>see also</u>

<u>Eichleay Corp.</u>, 944 F.2d at 1056 (citing <u>Tanoma Mining Co. v. Local Union No.</u>

<u>1269</u>, 896 F.2d 745, 747 (3d Cir. 1990)).

In reviewing an arbitrator's award on a matter properly before the arbitrator,

this extremely limited scope of review is well-grounded in United States Supreme

Court precedent.  In fact, courts are not permitted to reconsider the merits of a

labor arbitration award, even if the award rests on errors of law or fact, due to the

underlying federal policy which favors settling labor disputes by arbitration.

United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987); see also

Lukens Steel Co. v. United Steelworkers of America, 1991 U.S. Dist. LEXIS 9286

*9 (E.D. Pa. 1991).  The parties are in agreement that as long as the award "draws

its essence" from the agreement being interpreted, the court is required to uphold

that award.  United Steelworkers of America v. Enterprise Wheel & Car Corp., 363

U.S. 593, 597 (1960).  The test of whether an award "draws its essence" from an

agreement is whether "the interpretation can in any rational way be derived from

the agreement . . . ; only where there is a manifest disregard of the agreement,

totally unsupported by principles of contract construction and law of the stop, may

a reviewing court disturb the award."  Ludwig Honold Mfg. Co. v. Fletcher, 405

F.2d 1123, 1128 (3d Cir. 1969); see also Lukens Steel Co., 1991 U.S. Dist. LEXIS

9286 at *9.  "This test if a singularly undemanding one: 'as long as the arbitrator is

even arguably construing or applying the contract and acting within the scope of

his authority,' his decision should not be overturned."  Lukens Steel Co., 1991 U.S.

Dist. LEXIS 9286 at *10 (citing Misco, 484 U.S. at 38).  As accurately submitted

by Plaintiff, however, the arbitrator's award cannot simply reflect the arbitrator's

own notions of industrial justice.  Misco, 484 U.S. at 38.

As the JCB's decision is entitled to the same deference as that of an arbitrator, as previously noted, we must determine whether the JCB's decision draws its essence from the CBA in effect between the parties.  We initially turn to the August 23, 2005 hearing before the JCB in which Mr. Olenick testified on behalf of the Union and Mr. Hesse testified on behalf of Kalkreuth.  After deliberation, the JCB rendered a unanimous decision that provided, in pertinent part, the following:

> 1.    The JCB is unable to determine the distance from the Employer's Frederick, Maryland shop location to either of the jobsites involved in these grievances by the method required in Article XXIII Section 4 of the RCA/Roofers Local 30 CBA.
>
> 2.    It is a given that the Employer's shop location in Wheeling, WV is more than 75 miles from the jobsites in question.
>
> 3.    In view of the fact that the only signed CBA on file between Roofers Local 30 (Phila) and Kalkreuth Roofing & Sheet Metal, Inc. applicable to the area where the jobsites are located shows the Employer's location and contact phone number as being Wheeling, WV, coupled with Mr. Hesse's testimony that he has not signed a CBA or PLA with Local 30 in this area using the Frederick, Md. location, the Joint Conference Board sustains the Grievance brought by Roofers Local 30 against Kalkreuth Roofing & Metal, Inc.

Rec. Doc. 10, Ex. 5.

In challenging the JCB's decision in this matter, we are in agreement with Defendant that Plaintiff is not only disregarding the extremely limited scope of

review with which we are bound, but also the facts unique to this case.  Although

Plaintiff strenuously argues that the JCB has required Kalkreuth to pay monies to

the grievants despite the fact that they were hired, managed, and controlled by the

Frederick, Maryland shop, and that the grievants lived in the general area

surrounding the work sites, the fact remains that the JCB did not make a finding

that the grievants were hired, managed, and controlled by the Frederick Shop, nor

that they lived in the general area surrounding the work sites.  Although Plaintiff

asserts that it was incumbent upon the JCB to conduct such an inquiry, it concedes

that one was not made.  Conversely, the JCB's unanimous decision found that the

only signed CBA on file between the parties applicable to the area where the job

sites were located, showed the employer's location and contact phone number as

being the Wheeling Shop.  In addition, although Plaintiff maintains that the JCB

did not follow the contractual requirements for measuring the 75 mile requirement,

a review of the CBA reveals no requirement that the relevant shop for measuring

the 75 mile distance be conducted on the basis of where the grievants were hired,

managed, controlled, or reside.  Article XXIII § 2 of the CBA provides that "[a]ll

jobs more than 75 miles from the Employer's shop shall be deemed Board Jobs."

The JCB's unanimous decision that the Wheeling Shop was the relevant shop for

measuring the 75 mile requirement was based upon the fact that, as noted, the only

signed CBA on file between the parties applicable to the area where the job sites were located showed the employer's location and contact phone number to be Wheeling, combined with the fact that Mr. Hesse, the employer's Vice-President for the Maryland division, testified that he had not signed a CBA or PLA with the Union covering the job site areas using the Frederick Shop location.

After a careful review of the record, applicable case law, and in light of our extremely limited scope of review, we cannot find a decision made on the basis of the location in which the CBA is signed and upon consideration of testimony provided by Kalkreuth's Vice-President of the Maryland division, to be a "manifest disregard of the agreement, totally unsupported by principles of contract construction and law of the stop, may a reviewing court disturb the award." Ludwig Honold Mfg. Co., 405 F.2d at 1128; see also Lukens Steel Co., 1991 U.S. Dist. LEXIS 9286 at *9.  Such interpretation by the JCB can rationally be derived from the CBA at issue.

In addition, Plaintiff argues that because the JCB did not use the travel map to assess the 75 mile measurement, it contravened the requirements of the CBA. Article XXIII § 4 provides that "determination of the aforementioned seventy-five (75) mile limit shall be made by a straight-line measurement of eighteen (18) inches from the Employer's shop on the Local 30 Travel Map established by the

Union and the Association in January of 1980." Plaintiff's own witness at the JCB

hearing stated that because neither his shop nor the job sites at issue appeared on

the "Local 30 Travel Map," it was not possible for him to utilize the straight line

18 inch measurement called for in the CBA to establish the distance from the shop

to the job. Accordingly, the JCB made a finding that it was unable to determine

the distance from the employer's Frederick, Maryland shop location to either of the

job sites involved in the grievances by the method required in Article XXIII § 4 of

the CBA. Although as accurately submitted by Plaintiff, Mr. Hesse provided

testimony that the Frederick Shop was less than 75 miles from the job sites, the

JCB made no finding that the employer's shop location in Frederick, Maryland is

within 75 miles of the job sites in question. Plaintiff does not appear to argue that

the Wheeling Shop is under the 75 mile requirement, but asserts that the JCB did

not follow the travel map requirement located in Article XXIII § 4. We agree with

Defendant that such argument lacks reasonableness and practicality as Plaintiff's

own witness testified that it was impossible to use the travel map in this case. The

JCB determined that the Wheeling Shop was the relevant shop and, in the face of a

procedural impossibility, it reasoned that the Wheeling Shop was undisputedly

more than 75 miles from the job sites in question. We find that such a

determination draws its essence from the 75 mile requirement found in the CBA.

Plaintiff's final argument raises the issue of whether the JCB had jurisdiction over the Naval Project grievance.  Plaintiff asserts that the Naval Project grievance should have been denied because it was not taken to arbitration in a timely manner. Plaintiff contends that the grievance had to have been submitted to the JCB within ten days of the Union's receipt of Kalkreuth's grievance denial; however, it was not.  "The November 16, 2004 grievance was denied by Kalkreuth on November 23, 2004.  Therefore, the grievance needed to be submitted to the JCB by December 3, 2004.  In fact, Kalkreuth found out about submission to the JCB on August 12, 2005.  This was more than nine months after the date the contract specified that the grievance had to have been submitted to the JCB, and the grievance should have been denied on that basis as well."  (Pl.'s Br. Supp. Mot. Summ. J. at 10).

As we previously noted, Article VIII § 2(c) provides that: "If the grievance is denied at Step One the Grieving Party may submit a grievance to the Joint Conference Board within ten (10) days of receipt of the denial response.  If the grievance is not submitted to the Joint Conference Board within this time period, the grievance shall be deemed to be finally denied."  Defendant accurately submits that Plaintiff offers no evidence that the Naval Project grievance was not timely submitted to the JCB, other than the argument that because Kalkreuth did not know

18

that the grievance had been submitted to the JCB until August 12, 2005, that it could not have been timely submitted by December 3, 2004.  First, we are aware of no contractual requirement that Kalkreuth be notified that a grievance has been submitted to the JCB.  Moreover, whether Kalkreuth was sent a notice or was not, or received such notice or did not, this fails to show whether the grievance was, in fact, timely submitted to the JCB.  Second, as pointed out by Defendant, Plaintiff had every opportunity prior to and at the JCB hearing to raise a timeliness objection to the Naval Project grievance, but failed to do so.  Prior to the Petition to Vacate the JCB's decision, there was never a timeliness objection to the Naval Project grievance by either Kalkreuth or the JCB.  In fact, at the August 23, 2005 JCB hearing, Mr. Hesse mentioned that he was not aware of the other grievance, the Highmark grievance, until he received notice of the hearing; however, he failed to even mention the Naval Project grievance.[3]  Mr. Hesse then declares for the first time in his affidavit that he was unaware that the Naval Project grievance had been submitted to the JCB.

We find that Kalkreuth waived its right to contest arbitration committee jurisdiction before this Court when it failed to raise the jurisdictional objection to

---

[3] Kalkreuth then explicitly consented to the JCB's jurisdiction over the Highmark grievance at the August 23, 2005 hearing.

the Naval Project grievance before the JCB in the first instance.  See Teamsters

Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42-3 (3d Cir. 1985); see

also Meat Cutters Local 195 v. Cross Brothers Meat Packers, Inc., 372 F. Supp.

1274, 1276 n.2 (E.D. Pa. 1974), aff'd, 518 F.2d 1113, 1121 (3d Cir. 1975).

Assuming, arguendo that we do not find that Kalkreuth waived its right to

contest the JCB's alleged lack of jurisdiction over the Naval Project grievance, we

find that the JCB decided the timeliness matter presented to the Court when it

rendered its decision and it cannot now be disturbed.  In that regard, it is important

to note that when a party submits to arbitration, it is bound to honor the arbitrator's

award because submission to the procedures evidences an agreement to arbitrate.

Teamsters Local Union No. 764 v, 770 F.2d at 42 (finding that the employer "was

represented at the arbitration by two high ranking employees with full authority to

bind the company with respect to labor matters . . . [such conduct] manifests a clear

intent to arbitrate its dispute with the Union," and the employer is bound by the

decision of the Board); see also Griesmann, 776 F.2d at 73 n.11.  Additionally,

timeliness is a procedural arbitrability matter which the JCB decided and which

cannot be disturbed.  The United States Supreme Court has established and the

Third Circuit Court of Appeals has agreed that matters of procedural arbitrability

are to be left to the arbitrator and the courts should not interfere.  John Wiley &

Sons, Inc. v. Livingston, 376 U.S. 543, 557 (1964)("procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator"); Bell Atlantic-Pennsylvania, Inc. v. Communications Workers of America, 164 F.3d 197, 203 (1999); Independent Ass'n of Continental Pilots v. Continental Airlines, 155 F.3d 685, 695 (1998).  Moreover, the United States Supreme Court and the Third Circuit Court of Appeals have specified that timeliness is a procedural arbitrability issue.  John Wiley & Sons, Inc., 376 U.S. at 556 & n.11; Troy Chem. Corp. v. Teamsters Union Local No. 408, 37 F.3d 123 (3d Cir. 1994) (citing Ass'n of Flight Attendants, AFL-CIO v. USAir Inc., 960 F.2d 345, 349 (3d Cir. 1992)).

Plaintiff's mere assertion that Defendant has not supplied a supporting exhibit, that demonstrates the JCB received the Naval Project grievance within the time limits specified by the CBA, has not presented us with any reason to believe that the Naval Project grievance was not timely submitted to the JCB in accordance with applicable CBA provisions.  Moreover, Kalkreuth waived its right to contest arbitration committee jurisdiction before this Court when it failed to raise the jurisdictional objection to the Naval Project grievance before the JCB in the first instance.  See Teamsters Local Union No. 764, 770 F.2d at 42-3; see also Meat Cutters Local 195, 372 F. Supp. at 1276 n.2.

Finally, and as previously noted, after a careful review of the record, applicable case law, and in light of our extremely limited scope of review, we find that the JCB's award draws its essence from the CBA in effect between the parties.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      Defendant's Motion to Dismiss Plaintiff's Complaint (doc. 10) is

construed as a Motion for Summary Judgment pursuant to

Fed.R.Civ.P. 12(b)(6) because Defendant has submitted matters

outside of the pleadings for our consideration.

2.      Defendant's Motion for Summary Judgment (doc. 10) is GRANTED.

3.      Plaintiff's Motion for Summary Judgment (doc. 13) is DENIED.

4.      The Clerk shall close the file on this case.


                              s/ John E. Jones III
                              John E. Jones III
                              United States District Judge